**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LESLIE ARRINGTON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 12-264E |
| v. | ) ) | Judge Cathy Bissoon |
| COLORTYME, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

This is a putative class action for the unlawful interception and disclosure of electronic communications pursuant to the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511.  Plaintiff Leslie Arrington, on behalf of herself and others similarly situated, alleges that Defendants ColorTyme Inc. ("ColorTyme"), the franchisor, and CMG Rentals LLC ("CMG"), the franchisee, from whom she obtained a rent-to-own computer, installed and used "spy" software to intercept and monitor her emails and other private activities.  (See 2d Am. Compl., ECF No. 21.)  Plaintiff also brings state-law claims for invasion of privacy, conspiracy and aiding and abetting pursuant to 28 U.S.C. § 1367.  She seeks monetary and declaratory relief, as well as attorney's fees and costs.  ColorTyme and CMG have filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); CMG also moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(2).  (ECF Nos. 22, 24.)

For the reasons discussed below, Defendants' Motions to Dismiss will be denied.

**BACKGROUND**

The facts set forth below are derived entirely from Plaintiff's most-recently filed

pleading, the Second Amended Complaint (hereinafter referred to and abbreviated as the

"Complaint").  Plaintiff is a resident of Clarkston, Washington.  Plaintiff alleges that, on March

31, 2011, she entered into a rent-to-own ("RTO") agreement for a personal laptop computer with

CMG and ColorTyme at CMG's retail location in Clarkston.  (ECF No. 21 at ¶¶ 7, 9, 44.)

Unbeknownst to her at the time she acquired the RTO computer, Plaintiff alleges that

CMG and ColorTyme installed on the computer a program called PC Rental Agent,

"which could monitor [her] in her home, and intercept her private communications."

(Id. at ¶¶ 45-47.)  PC Rental Agent was manufactured by DesignerWare LLC, a now-defunct

Pennsylvania-based company, and was "sold to the ColorTyme Defendants by DesignerWare."

(Id. at ¶ 31.)  Once PC Rental Agent is installed, it is "invisible or generally undetectable to

customers and to other end users of ColorTyme RTO computers."  (Id. at ¶ 32.)  Plaintiff alleges

that PC Rental Agent:

> permits the installer – in this case CMG and the [other as yet unidentified
> ColorTyme] Franchisees – to remotely 'install' or 'build' a 'Detective
> Mode' on the RTO computer over the internet and through the PC Rental
> Agent and/or DesignerWare website.  After the Detective Mode has been
> remotely installed on the RTO computers, the installer is able to choose
> the various levels of surveillance upon the RTO computer and the
> computer users.  These various levels of surveillance permit the installer to
> secretly take photographs with the RTO computers' webcams, and capture
> keystrokes, and screen shots . . . .  At one level of activation, Detective
> Mode will gather and transmit it to DesignerWare every two minutes that
> the computer is connected to the Internet for a period of 60 minutes. . . .
> If the rent-to-own store wants more information, it can cause Detective
> Mode to record data every two minutes until prompted to stop doing so.
> DesignerWare's servers collect this information and transmit it to the
> franchisee for however long the franchisee leaves the program turned on.

(Id. at ¶¶ 33, 34, 36.)  Furthermore, because the software automatically logs WiFi hotspot

locations and reports those locations to the ColorTyme franchisees, surveillance may be

conducted regardless of whether Detective Mode is activated.  (Id. at ¶¶ 39-40.)

According to the Complaint, once DesignerWare obtains the information through

Detective Mode, it "then forwards the data via e-mail to the licensee who activated the program

. . . unencrypted, directly to the email accounts designated by the ColorTyme franchisees,"

which are purportedly maintained on ColorTyme's servers.  (Id. at ¶¶ 11, 36, 37.)  DesignerWare

also allegedly provided the franchisees with routine customer service and support.  (Id. at ¶ 14.)

All of this was supposedly made possible by ColorTyme, the national franchisor, who "provided

its Franchisees access to DesignerWare via a link on its message board, as well as Email

transmitted through ColorTyme intranet and/or corporate server." (Id. at ¶ 11; see also ¶ 38.)

Plaintiff alleges that she never gave her consent or authority to CMG or ColorTyme to use this

software but that it was installed on her computer anyway, and that upon information and belief,

images were taken of her remotely by the webcam and her private communications were stolen,

"all via PC Rental Agent."  (Id. at ¶¶ 46, 47.)  All of the information allegedly obtained from the

RTO customers' computers, as well as the knowledge of where that information may have been

sent after it was allegedly acquired, lies entirely within the custody of CMG and ColorTyme.

(See id. at ¶ 27(a).)

Plaintiff initiated this putative class action on October 25, 2012, on behalf of herself and

all others "who have purchased, leased, rented or rented to own ColorTyme computers and

people who used said computers whose electronic communications and/or images were

intercepted, accessed, monitored, and or transmitted by [PC Rental Agent] without authorization

or permission, wherever they may reside" in the United States.  (Id. at ¶ 1.)  She also has named

3

100 "John Doe" ColorTyme franchisees who, like CMG, allegedly have used PC Rental Agent to spy on their customers.

**ANALYSIS**

Both ColorTyme and CMG move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and CMG also moves for dismissal pursuant to Rules 12(b)(1) and 12(b)(2). Because CMG's arguments under Rules 12(b)(1) and 12(b)(2) address the Court's jurisdiction, they will be addressed first. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) ("[the] court must assume jurisdiction over a case before deciding legal issues on the merits").

    **A.**       **Jurisdiction**

        1.    Subject-Matter Jurisdiction Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a complaint if the court lacks subject-matter jurisdiction to hear the case. Among other things, a defendant may challenge the court's subject-matter jurisdiction based on the plaintiff's lack of standing. ACLU-NJ v. Township of Wall, 246 F.3d 258, 261 (3d Cir. 2001). For the purposes of constitutional standing, a plaintiff must show: (1) that he or she has suffered an injury in fact–that is, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of, such that the injury fairly is traceable to the challenged action of the defendant, rather than the result of an independent action of some third party not before the court; and (3) that it is likely the injury will be redressed by a favorable decision of the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Absent standing, and by

4

extension subject-matter jurisdiction, the court does not possess the power to decide the case, and any disposition it renders is a nullity.  Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, 673 F.2d 700, 711 (3d Cir. 1982).

A defendant may challenge the court's subject-matter jurisdiction with either a facial or factual attack.  Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000).  In a facial attack, the defendant contests the sufficiency of the well-pleaded allegations insofar as they provide a basis for the court's exercise of subject-matter jurisdiction; as under Rule 12(b)(6), the court must treat the complaint's well-pleaded jurisdictional facts as true and view them in the light most favorable to the plaintiff.  NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001); Cunningham v. Lenape Regional High Dist. Bd. of Educ., 492 F. Supp.2d 439, 446-47 (D.N.J. 2007).  Dismissal pursuant to a facial attack "is proper only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous."  Kehr Packages, 926 F.2d at 1408-1409 (internal quotes omitted).

In a factual attack, on the other hand, the defendant challenges the factual basis underlying the court's subject-matter jurisdiction with extrinsic evidence, essentially making the argument that the allegations supportive of jurisdiction are not true.  Cunningham, 492 F. Supp.2d at 447.  Because this Court must be satisfied at all times that it has the power to hear the case, it "may consider evidence outside the pleadings" "to resolve factual issues bearing on jurisdiction."  Gould Electronics, 220 F.3d at 176; Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997); Int'l Ass'n of Machinists, 673 F.2d at 711.  Once the defendant presents extrinsic evidence contesting the jurisdictional facts set forth in the complaint, the court must permit the plaintiff to respond.  Gould Electronics, 220 F.3d at 177.  "The court may then determine

5

jurisdiction by weighing the evidence presented by the parties," "*evaluating for itself* the merits

of the jurisdictional claims."  Id.; Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884,

891 (3d Cir. 1977) (emphasis added).  In making this evaluation, no presumption of truthfulness

attaches to the allegations set forth in the complaint.  Mortensen, 549 F.2d at 891.  Rather,

the challenge must be evaluated solely on the merits of the evidence submitted on jurisdiction.

Id.

### 2.    Personal Jurisdiction under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a complaint to be dismissed on the

grounds that the court lacks personal jurisdiction over the defendant.  In ruling on a

Rule 12(b)(2) motion, a court must accept the plaintiff's allegations as true and draw in the

plaintiff's favor all reasonable inferences supported by the well-pleaded factual allegations.

Carteret Sav. Bank, FA, v. Shushan, 954 F.2d 141, 151 n.1 (3d Cir. 1992).  However, "once the

defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a

preponderance of the evidence, facts sufficient to establish personal jurisdiction."  Id. at 146;

see also Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (unless court

holds an evidentiary hearing, plaintiff need only make *prima facie* showing of personal

jurisdiction under Rule 12(b)(2)).

A federal district court may assert personal jurisdiction over a nonresident of the state

where the court sits to the extent authorized by that state's long-arm statute.  Fed. R. Civ. P. 4(k);

Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).  Pennsylvania's long-arm statute provides

for jurisdiction over a non-resident party who transacts any business in the state, as well as

"to the fullest extent" permitted under the Due Process Clause of the Fourteenth Amendment.

42 Pa. Cons. Stat. §§ 5322(a)-(b).  Pennsylvania's long-arm statute defines "transacting any

business" as "[t]he doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object" or "[t]he doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts."  § 5322(a)(1)(i)-(ii).  So as not to offend the defendant's right to due process, a court may exercise jurisdiction pursuant to a state's long-arm statute only where the defendant has initiated "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," specifically the extent to which the defendant has, through its contacts, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protection of its laws."  Shaffer v. Heitner, 433 U.S. 186, 204 (1977); Hanson v. Denckla, 357 U.S. 235, 253 (1958).  "The issue of minimum contacts is rather fact-sensitive in that it turns on the quality and nature of a defendant's activity in relation to the forum state."  Pennzoil Prod. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 203 (3d Cir. 1998) (internal quotes omitted).

The purposeful availment requirement seeks to achieve an all-important constitutional balance:  on the one hand, it protects defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person," while still providing injured parties with the means to sue non-resident defendants in situations where the harm "proximately result[ed] from actions by the defendant *himself* that" are "directed toward" and have thus created "a substantial connection with the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations omitted)

(emphasis in original).  J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011).

A substantial connection may be established by a plaintiff's showing the existence of an ongoing

commercial relationship between the defendant and a citizen of the forum state.  Burger King,

471 U.S. at 473, 478-79.

      Personal jurisdiction may be established through one of two theories:  general

jurisdiction, where the court may hear any claim the plaintiff has against the defendant,

whether it arose in the forum state or not, because the defendant maintains broad "systematic and

continuous contacts with the forum state" and is "essentially at home" there; or specific

jurisdiction, where the court is limited to hearing only those claims against the defendant that

arise from the defendant's contacts with the forum state.  Goodyear Dunlop Tires Operations,

S.A. v. Brown, 131 S. Ct. 2846, 2850 (2011); Marten, 499 F.3d at 296 (citing Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984)).  To establish specific

jurisdiction, the plaintiff must prove that:  (1) the defendant has purposefully directed his

activities at the forum; (2) that the plaintiff's claim arises out of or relates to at least one of those

specific activities, and (3) that the court's exercise of jurisdiction over the defendant comports

with traditional notions of fair play and substantial justice.  Marten, 499 F.3d at 296 (discussing

Burger King, 471 U.S. at 472; Helicopteros, 466 U.S. at 414; Int'l Shoe, 326 U.S. at 320)).

"Because this analysis depends on the relationship between the claims and the contacts," as well

as the larger factual context in which the contacts occur, specific personal jurisdiction must be

evaluated on a claim-by-claim basis.  Marten, 499 F.3d at 296.

3.      CMG's Motions

In support of its jurisdictional challenges, CMG attaches a two-page, double-spaced affidavit from Gary C. Hughes (ECF No. 22-1), one of its principals.  With respect to CMG's Rule 12(b)(1) challenge, the affidavit submits that "CMG has never acted in concert with DesignerWare except as a customer," and that "[w]hile CMG has purchased and used the PC Rental Agent software," it "has only used the 'lockdown' and 'F3' features of this software," and "has never used 'Detective Mode' feature," nor has it "used DesignerWare's web server to build, install or activate the Detective Mode feature on any computer leased to any of CMG's customers."  (ECF No. 22-1 at ¶¶ 12-14.)  The affidavit does not explain what Mr. Hughes's duties at CMG are, nor does it say whether he has any personal experience in administering CMG's use of PC Rental Agent or supervising his employees' use of the software.  Regarding the Rule 12(b)(2) challenge, the affidavit declares that CMG has never conducted business in Pennsylvania, has no employees in Pennsylvania, has never leased or owned property in Pennsylvania or had a place of business Pennsylvania, has never had any customers in Pennsylvania, and that no CMG personnel have ever visited or conducted business with DesignerWare in Pennsylvania or had any involvement in how DesignerWare did business in Pennsylvania.  (Id. at ¶¶ 4-10.)

CMG's affidavit is insufficient to attack either the Court's subject matter jurisdiction to hear the case or its exercise of personal jurisdiction over CMG.  Regarding its factual attack on the Court's subject-matter jurisdiction, the essential thrust of the affidavit is that CMG never engaged in any injurious conduct towards Plaintiff, and that none of the ill effects of ColorTyme's arrangement with DesignerWare can be traced back to CMG because it never used the software to intercept private information, even if it had the capability to do so by virtue of

being DesignerWare's customer.  Thus, CMG argues, Plaintiff has no standing to pursue a cause of action against it.

CMG has not submitted any additional evidence, however, to corroborate the factual assertions in Mr. Hughes's affidavit.  Even more to the point, CMG plainly admits that, as DesignerWare's customer (an averment that somewhat is at odds with its declaration that it has never conducted business with DesignerWare), it purchased PC Rental Agent and used the "lockdown" and "F3" features, yet it makes no effort to explain what these features are or how their use is unrelated to Detective Mode or the interception of customers' private communications.  As Plaintiff further points out, the affidavit says nothing about whether CMG investigated if any of its employees ever activated Detective Mode, nor does it state whether CMG conducted a forensic review of its servers for any emails from DesignerWare that might contain its customers' private communications.  (ECF No. 28 at p. 4.)

In light of the fact that the evidence regarding CMG's use of PC Rental Agent lies solely within its own custody, the Court would expect CMG to provide more in the way of affirmative proof than just a general denial.  "Evaluating for itself the merits of" CMG's jurisdictional claim, the Court finds that this quantum of evidence -- a short self-serving affidavit with no supporting documentation -- cannot itself sustain a factual attack on the Court's subject-matter jurisdiction. Gould Electronics, 220 F.3d at 177; see also Washington v. Hovensa LLC, 652 F.3d 340, 346-47 (3d Cir. 2011); De Cavalcante v. C. I. R., 620 F.2d 23, 26-27 (3d Cir. 1980) (when charged with making evidentiary determinations, court may find that self-serving affidavits absent evidentiary support are insufficiently probative).

Setting aside the affidavit, and alternatively construing CMG's jurisdictional attack as a facial one, the Court similarly concludes that the Complaint's well-pleaded facts are in no way

frivolous or immaterial.  Rather, Plaintiff specifically alleges that CMG installed PC Rental Agent on her computer (which, incidentally, CMG itself admits that it did) without informing her, and that CMG subsequently intercepted her private electronic communications without her knowledge or authorization.

The affidavit is also insufficient to challenge the Court's exercise of personal jurisdiction over CMG.  Unlike a factual challenge under Rule 12(b)(1), where the allegations in the complaint lose their presumption of truthfulness and the court reviews only the evidence on jurisdiction submitted by the parties, the Court in reviewing a Rule 12(b)(2) challenge may consider the well-pleaded factual allegations in the complaint in addition to the parties' jurisdictional evidence.  <u>Metcalfe</u>, 566 F.3d at 330-31.  Here, Plaintiff has alleged that, upon CMG's initiation of PC Rental Agent's "detective mode," DesignerWare would, from its sole location in Pennsylvania, begin surveilling "for however long the franchisee leaves the program turned on," collect that information on its servers in Pennsylvania, and then send the results to CMG at the email account(s) it designated on ColorTyme's servers.  (ECF No. 21 at ¶¶ 34, 36-38.)  As set forth in the Complaint, this allegedly happened not just once or twice, but repeatedly after Plaintiff acquired the RTO computer.  Furthermore, because the software purportedly is hidden from the RTO customer, Plaintiff alleges that, apart from knowing that PC Rental Agent was in fact installed on her RTO computer, it was impossible for her to discern exactly how many times it was used to intercept her private information.  (<u>See</u> ECF No. 21 at ¶¶ 46, 47.)

Thus, Plaintiff's well-pleaded allegations essentially complain of an ongoing course of conduct between CMG and DesignerWare whereby CMG, as DesignerWare's customer, would, *at its own volition* and for whatever reason it wanted, command DesignerWare in Pennsylvania

to collect its customers' private communications and other data through DesignerWare's server in Pennsylvania and then send the data via from Pennsylvania to CMG in Washington. This deliberate conduct is more than merely "random, fortuitous, or attenuated contacts" or "the unilateral activity of another party or a third person," which are insufficient to confer personal jurisdiction. Burger King, 471 U.S. at 475 (internal marks omitted). To the contrary, this is exactly the sort of serial conduct performed for the purpose of obtaining a benefit that Pennsylvania's long-arm statute classifies as "transacting any business in [Pennsylvania]." § 5322(a)(1)(i). Although CMG's method of contacting Pennsylvania may have been remote and spatially imperceptible, the benefit CMG stood to obtain from its contacts certainly was not: by contacting DesignerWare in Pennsylvania through PC Rental Agent, CMG allegedly could, whenever it wanted and for whatever reason, acquire its customers' private communications and other data. This is the essence of purposeful availment.

### a.     Targeted Contacts

The Court acknowledges that its exercise of personal jurisdiction over CMG in this action is somewhat at odds with a ruling in a related case in this judicial district, Byrd v. Aaron's, Inc., Civil Action No. 11-101E (W.D. Pa.) (filed May 3, 2011). (See Hearing Tr., Mar. 20, 2012, ECF No. 95 at 8:16 - 9:15.) In Byrd, after a hearing on the RTO computer franchisee's Rule 12(b)(2) motion, the district judge then assigned to the case stated on the record that "purposeful availment requires a deliberate targeting of citizens" – that is, the *citizenry* – "of the forum." Id. The undersigned respectfully disagrees with this assessment.

First, the Byrd ruling arguably is inconsistent with Pennsylvania's long-arm statute, which permits jurisdiction where the defendant has initiated "a series of similar acts for the

purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object."
42 Pa. Cons. Stat. § 5322(a(1)(i).  Although the Complaint in this action does not specifically
allege the pecuniary benefit that CMG stood to obtain from intercepting its customers' private
data, it is reasonable to infer based on the Complaint's well-pleaded facts that CMG would have
intercepted this information only if it stood to gain from doing so.  For example, if CMG
believed that a customer was misusing the RTO computer or intended to steal it, activating PC
Rental Agent's Detective Mode would, presumably, enable CMG to recover the computer,
thus conferring a pecuniary benefit.  At this early stage of the litigation, where information
regarding CMG's intent in using PC Rental Agent, the scope of its use, and the extent of any
benefit is entirely within its custody, inferences regarding pecuniary benefit will be drawn in
Plaintiff's favor.  Thus, applying Pennsylvania's long-arm statute to reach CMG under the
circumstances here is consistent with due process.

        Second, while an out-of-state defendant's targeting its activities towards the citizenry of a
forum is one way to establish specific personal jurisdiction, the Supreme Court has contemplated
that personal jurisdiction may be exercised in circumstances where the defendant's contacts are
more narrowly focused and directed.  See J. McIntyre, 131 S. Ct. at 2877 ("the sovereign's
exercise of power require *some act* by which the defendant 'purposefully avails itself of the
privilege of conducting activities within the forum State'") (emphasis added) (quoting Hanson,
357 U.S. at 253), 2788-89 (noting that "a defendant may in an appropriate case be subject to
jurisdiction without entering the forum . . . as where manufacturers or distributers 'seek to serve'
a given state's market"). In Burger King, for example, the Supreme Court upheld a Florida
district court's exercise of jurisdiction over a Michigan franchisee on the basis that the franchisee
had initiated sufficient contacts with the Miami-based franchisor; it did not matter that the

Michigan franchisee had not targeted the citizenry of Florida.  471 U.S. at 478; see also id. at 473

(with respect to ongoing interstate contractual obligations, "parties who reach out beyond one

state and create continuing relationships and obligations with citizens of another state are subject

to regulation and sanctions in the other State for the consequences of their activities.") (citing

cases); 42 Pa. Cons. Stat. § 5322(a)(1)(i).

 Based on the hearing transcript, the ruling in Byrd appears to have been influenced by the

Court of Appeals for the Third Circuit's decision in D'Jamoos ex rel. Estate of Weingeroff v.

Pilatus Aircraft Ltd., 566 F.3d 94 (3d Cir. 2009).  There, the executors of the estates of

passengers killed in a plane crash in Pennsylvania pursued a products liability action against the

Swiss manufacturer who built the plane – a plane that was assembled and sold in Europe and

eventually reached the United States through a series of third-party re-sales.  Id. at 98, 103; see

Byrd, Civil Action No. 11-101E, at ECF No. 95 at 6:13.  Although the Swiss manufacturer also

sold planes in the United States through its exclusive distributor in Colorado, the plane at issue in

the crash did not pass through that chain of distribution.  D'Jamoos, 566 F.3d at 98-99.  Despite

the plane's entering Pennsylvania airspace and crashing there, the Court of Appeals for the Third

Circuit could not link that event with the manufacturer's only generalized "efforts to exploit a

national market [that] necessarily included [the forum state] as a target," absent some attempt by

the manufacturer to "deliberate[ly] reach[] into the forum state to target its citizens."  D'Jamoos,

566 F.3d at 103-04.

 The observations in Byrd notwithstanding, the undersigned finds D'Jamoos

distinguishable:  the Swiss manufacturer in D'Jamoos never reached out to the forum in any way,

whereas here, CMG concedes that it was DesignerWare's ongoing customer.  An implicit

assumption in Byrd, moreover, is that D'Jamoos's use of the term "citizens" means "the citizenry

14

at-large" of the jurisdiction.  In light of the Supreme Court's holding in Burger King, which permitted a district court in Florida to exercise jurisdiction over citizens of Michigan based on the ongoing commercial contacts they "targeted at" a single citizen of Florida, the undersigned declines to read D'Jamoos so narrowly.  Furthermore, in a case like this one -- where the defendant is alleged to have repeatedly reached out to the jurisdiction and obtained a tangible benefit each time, at the detriment and to the injury of the plaintiff -- requiring the contacts to extend to the citizenry at-large is inconsistent with the rule that minimum contacts are to be evaluated on a claim-by-claim basis.

Third, as a doctrine grounded in due process, specific personal jurisdiction rules are meant to be applied with respect to the unique facts at hand.  See Marten, 499 F.3d at 296; Pennzoil Prod., 149 F.3d at 203; Int'l Shoe, 326 U.S. at 320; see also Reams v. Irvin, 561 F.3d 1258, 1263 (11th Cir. 2009) ("due process is a flexible concept that varies with the particular circumstances of each case").  In light of how fiber optics have changed the way people interact with (and potentially injure) each other across state lines, a rigid application of specific jurisdiction principles -- in this case, not holding CMG to account for the alleged injuries it caused its customers every time it instructed DesignerWare in Pennsylvania to surreptitiously collect data and information from a customer's laptop computer, purely because in doing so CMG did not target the citizenry of Pennsylvania -- would ignore the fact that CMG obtained a tangible benefit every time it interacted with its commercial partner here.  Although CMG's contacts with Pennsylvania occurred solely through electronic media, they are sufficient to establish the type of "continuing obligations" that permit the exercise of personal jurisdiction in a manner consistent with the Fourteenth Amendment.  Burger King, 471 U.S. at 476; see also Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (when foreign

defendant enters into course of conduct that involves "the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper," and different result "should not be reached simply because business is conducted over the [i]nternet") (citing Burger King, 471 U.S. at 475)); Green v. William Mason & Co., 996 F. Supp. 394, 396 (D.N.J. 1998) ("Geography is not the touchstone of fairness.  In an age when business is routinely conducted by electronic technology, and air travel brings the two national coasts within hours of each other, state boundaries are less relevant to the determination of fairness.").

　　　　　b.　　Conspiracy

　　　　Jurisdiction over CMG also is proper under a conspiracy theory of personal jurisdiction. Pennsylvania courts permit the exercise of jurisdiction over non-resident defendants in cases where the plaintiff pleads, with particularity, the defendant's involvement in a conspiracy, the overt acts in furtherance of which occurred in Pennsylvania and ultimately injured the plaintiff.  Commonwealth ex rel. Pappert v. TAP Pharma. Prod., Inc., 868 A.2d 624, 633-34 (Pa. Commw. 2005); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 102 n.8 (3d Cir. 2004) (whether jurisdictional contacts may be imputed to foreign defendants based on "the conspiracy theory of jurisdiction" must be determined with reference to state's long-arm statute).  Although the Court of Appeals for the Third Circuit has not explicitly adopted this theory of jurisdiction, it has not disavowed it, and other courts of appeals have applied the theory when authorized to do so by the state's long-arm statute.  See, e.g., Second Amend. Found. V. U.S. Conf. of Mayors, 274 F.3d 521, 523-24 (D.C. Cir. 2001); Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1030 (D.C. Cir. 1997); Textor v. Bd. of Regents, 711 F.2d 1387, 1392-93 (7th Cir. 1983); Stauffacher v. Bennett, 969 F.2d 455, 460 (7th Cir. 1992); cf. LaSala v. Marfin Popular Bank

Public Co., Ltd., 2011 WL 49315, *4 (3d Cir. Jan. 7, 2011) (declining to apply conspiracy theory

of personal jurisdiction, but only because it was unavailable under New Jersey law); see also

Goodyear Dunlop Tires, 131 S. Ct. at 2857 (declining to address baseline issue of whether

"single enterprise" theory of jurisdiction is sustainable under Fourteenth Amendment's minimum

contacts analysis).

      Here, Plaintiff submits that CMG, in concert with DesignerWare and ColorTyme,

used PC Rental Agent to violate the ECPA and invade her privacy, which she pleads as the basis

of her state-law conspiracy claim.  See Baker v. Rangos, 324 A.2d 498, 506 (Pa. Super. 1974)

("a civil conspiracy is a combination of two or more persons to do an unlawful or criminal act"

that "becomes actionable when some overt act is done in pursuance of the common purpose or

design held by the conspirators, and actual legal damage results") (internal citations omitted).

As summarized at the outset, these are well-pleaded factual allegations that, accepted-as-true,

give rise to both a conspiracy claim and sufficient jurisdictional contacts.  This conclusion is

consistent with Byrd, where the Court, despite determining that the pleadings did not survive a

Rule 12(b)(2) challenge by the out-of-state franchisee, granted the plaintiffs leave to amend so

they could plead a conspiracy claim to establish personal jurisdiction, and the Court allowed

discovery so that the plaintiffs could explore the extent of a conspiracy.  (Civil Action No. 11-

101E, ECF No. 95 at 9:16-10:3.)

      In response to the Complaint's allegations, CMG has issued only a general,

unsubstantiated denial with no evidentiary support.  This is not enough to defeat Plaintiff's *prima

facie* showing that this Court's exercise of jurisdiction over CMG is consistent with

constitutional due process.  Metcalfe, 566 F.3d at 331.

**B.**     **Plaintiff's ECPA Claims and State-Law Claims**

1.     Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  Legal conclusions couched as factual allegations, conclusory factual allegations, and

threadbare recitations of a cause of action are insufficient to state a facially plausible claim.

Iqbal, 556 U.S. at 678-79.  In addition to pleading adequate factual content, the complaint also

must be legally sufficient. Id. at 678; Twombly, 550 U.S. at 555.  To determine the complaint's

legal sufficiency, the court must accept as true all of the facts, but not the legal conclusions,

alleged, draw all reasonable inferences in the plaintiff's favor, and confirm that the accepted-as-

true facts actually give rise to a claim that would entitle the plaintiff to relief. Id.

2.     Defendants' Motions

The ECPA imposes civil liability on any person who (1) "intentionally intercepts,

endeavors to intercept, or procures any other person to intercept, any . . . electronic

communication"; or who (2) either "intentionally discloses, or endeavors to disclose to any other

person," or "intentionally uses, or endeavors to use the contents of any . . . electronic

communication, knowing or having reason to know that the information was obtained through

the interception of a[n] . . . electronic communication."  18 U.S.C. §§ 2511(1); 2520; see also

Directv, Inc. v. Pepe, 431 F.3d 162, 166 (3d Cir. 2005) (private cause of action exists under

§ 2511 of ECPA).  An "intercept" occurs whenever the contents of any electronic

communication are in transmission and are simultaneously acquired by an electronic,

mechanical, or other device; an "electronic communication" includes "any transfer of signs,

18

signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole in part

by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects" interstate

commerce.  §§ 25410(4) & (11); Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 (3d Cir.

2003) (requiring simultaneity of acquisition and transmission of electronic communication)

(citing United States v. Steiger, 318 F.3d 1039, 1048-49 (11th Cir. 2003); Konop v. Hawaiian

Airlines, Inc., 302 F.3d 868 (9th Cir. 2002); Steve Jackson Games, Inc. v. U.S. Secret Serv.,

36 F.3d 457 (5th Cir. 1994); see also Joffe v. Google, -- F.3d --, 2013 WL 4793247 (9th Cir.

Sept. 10, 2013) (payload data transmitted over an unencrypted Wi-Fi network does not fall into

ECPA's exemption for communications that are "readily accessible to the general public").

As discussed in the jurisdictional analysis, Plaintiff's well-pleaded factual allegations are

sufficient to state a claim under the ECPA that is plausible on its face.  Construing the well-

pleaded factual allegations in her favor, Plaintiff complains that CMG's remote use of PC Rental

Agent enabled DesignerWare to acquire and collect to its servers her personal communications

as she sent them.  (ECF No. 21 at ¶ 36.)  Although DesignerWare's software and servers

facilitated the acquisition and transmission of Plaintiff's communications, CMG allegedly set the

process in motion.  (Id. at ¶¶ 33, 34.)  The Complaint further alleges that DesignerWare,

according to its arrangement with CMG, would then forward this information to CMG at its

designated email accounts through ColorTyme's servers, who provided its franchisees access to

PC Rental Agent in the first place and facilitated its use.  (Id. at ¶¶ 11, 38, 42.)  These

allegations, if true, would subject CMG and ColorTyme to liability under the ECPA for

procuring DesignerWare's services in intercepting Plaintiff's private communications.

See Black's Law Dictionary 1327 (9th ed. 2009) (defining "procure" as "getting or obtaining

something" or "bringing something about"); In re Armstrong World Industries, Inc., 432 F.3d

507, 512 (3d Cir. 2005) (if meaning of statutory language is clear, no further inquiry is required unless literal application would conflict with Congress's intent and statutory scheme). Whether Defendants actually did what Plaintiff alleges must be left to the discovery process.

Defendants argue that the allegations regarding their use of PC Rental Agent to obtain screenshots, monitor keystrokes, and take photographs through the computer's webcam are insufficient to state a cause of action under the ECPA because the Complaint does not state that this material was obtained while it was in transmission. Because the Complaint's allegations regarding Plaintiff's private communications are sufficient to plead the occurrence of an "intercept" under the ECPA, the federal cause of action survives, regardless of whether the screenshots, keystrokes and webcam photographs were in transmission. Furthermore, given the sophistication of the technology at issue, it is entirely possible that discovery will reveal that the screenshots, keystrokes and pictures were in some state of "transmission" as envisaged by the statute when they were obtained by PC Rental Agent. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element" and "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."). Thus, the Court will not address these allegations absent a more fully-developed record.

Finally, because Plaintiff's state-law claims for invasion of privacy, conspiracy and aiding and abetting are based on the same well-pleaded facts as the ECPA claim (in addition to the allegations regarding the screen shots and remote activation of the laptop's webcam), the Court will deny Defendants' motions to dismiss those claims as well.

For the reasons discussed above, the Court hereby enters the following:

20

## II.  <u>ORDER</u>

Defendants' Motions to Dismiss (ECF Nos. 22 and 24) are **DENIED**.


September 17, 2013                                                    s\Cathy Bissoon_____
                                                                     Cathy Bissoon
                                                                     United States District Judge

cc (via ECF email notification):

All Counsel of Record